IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAUL OLIVER DENNISON,

    Plaintiff,

v.                                                                               Civil Action No. 1:17cv165
                                                                             (Judge Keeley)

EMILY GILLESPIE, on behalf of Dismas
Charities; PIERRE LECONTE; and DISMAS
CHARITIES, INC.

    Defendants.

## REPORT AND RECOMMENDATION

### I. Introduction

On or about August 30, 2017, the *pro se* Plaintiff, then a federal prisoner[1] incarcerated at West Virginia's Central Regional Jail in Sutton, West Virginia, initiated this case by filing an action in in the Circuit Court of Harrison County, West Virginia, raising claims of due process violations, discrimination/equal protection; and an Eighth Amendment violation. On October 3, 2017, the case was removed to this Court by Defendant Pierre LeConte ("LeConte"), where it was docketed as a Bivens[2] civil rights action. See ECF No. 1. The Clerk of Court issued a Notice of General Guidelines for Appearing *Pro Se* in Federal Court and sent a copy to Plaintiff via certified mail, return receipt requested, at his last known address as reflected on the docket. ECF No. 4. On October 4, 2017, the Defendant LeConte filed a Motion to Establish Time Frame for Filing of Defenses and Objections Pursuant to Rule 12. ECF No. 2.

---

[1] A review of the BOP's online Inmate Locator indicates that Plaintiff was released from custody on December 6, 2017.

[2] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

On October 10, 2017, Defendant Dismas Charities filed a Motion to Dismiss for failure to state a claim. ECF No. 5.  On October 17, 2017, the copy of the Notice of General Guidelines for Appearing *Pro Se* in Federal Court was returned to the Court as undeliverable, marked "return to sender/refused/unable to forward." ECF No. 6. By Order entered October 24, 2017, the Assistant United States Attorney ("AUSA") was directed to advise the Court as to Plaintiff's whereabouts. ECF No. 10. A copy of that Order was sent to Plaintiff via certified mail, return receipt requested, at his last-known address as reflected on the docket. Id. On October 25, 2017, the AUSA filed a response. ECF No. 11.  On October 30, 2017, a Roseboro Notice issued, advising Plaintiff of his right to file a response to Defendant Dismas Charities' dispositive motion. ECF No. 12.  On November 1, 2017, the copy of the Court's October 24, 2017 Order was returned as undeliverable, marked "return to sender/refused/unable to forward."  ECF No. 14. By Order entered November 27, 2017, Defendant LeConte's Motion to Establish Time Frame for Filing of Defenses and Objections Pursuant to Rule 12 was granted in part and LeConte was directed to file his answer or other responsive pleading within sixty days. ECF No. 17. On December 19, 2017, Plaintiff faxed a Notice of Change of Address to the Clerk's office. ECF No. 19.  On January 8, 2018, Defendant LeConte filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum in support.  ECF Nos. 20, 21.  On February 13, 2018, a second Roseboro Notice issued. ECF No. 22.

Plaintiff never filed responses to Dismas Charities' or LeConte's dispositive motions.

This matter is now pending before the undersigned for review and Report and Recommendation pursuant to LR PL P 2.

## II. Factual History

A. <u>Underlying Conviction in the Northern District of West Virginia Case No. 1:15cr26-1</u>[3]

On January 13, 2015, in the United States District Court for the Northern District of West Virginia, the Plaintiff was named in a criminal complaint. ECF No. 1. On April 21, 2015, Plaintiff and a co-defendant were named in a three-count superseding indictment with a forfeiture allegation. ECF No. 33. On June 29, 2015, Plaintiff signed a plea agreement agreeing to plead guilty to Court One of the superseding indictment charging him with possession with intent to distribute oxycodone – aiding and abetting, in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)C); and 18 U.S.C. § 2; and Count Three, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2). ECF No. 56. The plea agreement included a forfeiture provision which included $1,552.31 in United State currency; three one-ounce gold bars; certain items of jewelry, a camera; an X-box One video game; numerous tools, including power tools; three four-wheelers; and a motorcycle. Id., ¶11 at 5 – 6. On July 7, 2015, Plaintiff entered a guilty plea pursuant to the terms of the agreement. ECF No. 55. Plaintiff was sentenced on October 15, 2015. ECF No. 68. On October 16, 2015, the District Court entered Judgment, noting that Plaintiff was sentenced to 37 months on Count One and 37 months on Count Three, to run concurrently, with credit for time served since April 1, 2015, followed by three years of supervised release. ECF No. 70 at 2 - 3.

On February 28, 2018, Plaintiff's probation officer filed a Non-Compliance Summary indicating that on February 28, 2018, Plaintiff had a drug screen that tested positive for cocaine and oxycodone; admitted to the illegal possession and use of both; and admitted to using those drugs with another individual, a known drug user and someone he associated with prior to his underlying offense. ECF No. 89. The probation officer recommended that no action be taken at

---

[3] In § II. (A) of this Report and Recommendation, all ECF numbers referred to are for Plaintiff's underlying criminal case: 1:15cr26-1.

that time. Id. By Order entered March 9, 2018, the Court concurred with the probation officer's recommendation. ECF No. 90.

On March 23, 2018, Plaintiff's probation officer filed another Non-Compliance Summary indicating that on March 23, 2018, Plaintiff submitted a drug screen that tested positive for oxycodone and admitted to the illegal possession and use of the same; the probation officer recommended that no action be taken at that time. ECF No. 91. By Order entered on March 26, 2018, the Court concurred with the probation officer's recommendation. ECF No. 92 at 2.

On April 13, 2018, Plaintiff's probation officer filed a Petition for Warrant or Summons for Offender Under Supervision, indicating that on April 4, 2018, and again on April 9, 2018, Plaintiff submitted drug screens that tested positive for oxycodone and admitted to the illegal possession and use of the same. ECF No. 93 at 1 – 2. The Officer recommended court action and mandatory revocation of supervised release. Id. at 2. By Order entered April 13, 2018, the Court concurred with the probation officer's recommendation and issued an arrest warrant. ECF Nos. 94, 95. On April 19, 2018, the Government filed a motion for detention. ECF No. 97. Plaintiff was arrested the same day and made his initial appearance on his violation of supervised release. ECF No. 99, 102. Afterward, an Order of Temporary Detention Pending Hearing Pursuant to Bail Reform Act was entered. ECF No. 101. Plaintiff was held in custody. Id. By Order entered April 20, 2018, a Public Defender was appointed. ECF No. 103.

On April 23, 2018, the probation officer filed an Amended Petition for Warrant or Summons for Offender Under Supervision, indicating that on April 19, 2018, Plaintiff submitted a drug screen that tested positive for oxycodone and admitted to the illegal possession and use of the same. ECF No. 104 at 1 – 2. The probation officer again recommended that Plaintiff's term of supervised release be revoked. Id. at 3.

On April 24, 2018, a Detention and Preliminary Revocation Hearing was held. ECF No. 105. Plaintiff waived his right to a preliminary hearing. ECF No. 106. By Order entered the same day, the Amended Petition for Warrant or Summons for Offender Under Supervision was granted. ECF No. 107. An Order was also entered, finding probable cause to hold a final revocation hearing and detaining Plaintiff until then. ECF No. 108. The final hearing was held on June 4, 2018. ECF No. 111. An Order issued afterward, holding the Amended Petition for Warrant or Summons for Offender Under Supervision in abeyance and releasing Plaintiff from custody. ECF No. 112. A status conference was scheduled for July 16, 2018. Id.

**B. Contentions of the Parties**

**1) The Complaint**

Plaintiff's brief, tersely-worded complaint can only be described as sparse. It appears that Plaintiff is complaining that Emily Gillespie, on behalf of Dismas Charities, violated his due process rights by subpoenaing Pierre LeConte to have him removed from a halfway house program and placed in the regional jail, "where legal access is limited before BOP process was handled in full and correctly." ECF No. 1-1 at 3. The undersigned construes this to mean Plaintiff is complaining that he was removed from the halfway house before he had the opportunity to have a disciplinary hearing. He also complains that he was removed when "other residents accused of the same violation . . . were not[.]" Id. at 4. Further, he protests his placement at the jail where there was "limited legal access as well as limited access to exercise equipment and other opportunities that are offered at a fully operational" Bureau of Prisons ("BOP") facility. Id.

The complaint alleges three grounds for relief based on his removal from the halfway house: (1) "Violation of due process"; (2) "Discrimination"; and (3) "Eighth Amendment." ECF No. 1-1 at 3 – 4.

The complaint is unsigned and includes no claim for relief.

## 2) Defendant Dismas Charities' Motion to Dismiss for failure to state a claim and failure to exhaust

Defendant Dismas Charities argues that the case should be dismissed because:

1) this Court lacks subject matter jurisdiction, based on Plaintiff's failure to exhaust the habeas corpus remedies provided by 28 U.S.C. § 2241.

2) To the extent that Plaintiff alleges a post-conviction habeas corpus claim, Dismas Charities is not a proper party.

3) Dismas Charities is a private actor, therefore, Plaintiff fails to state a claim against Dismas Charities, under Bivens or 42 U.S.C. § 1983 because Dismas is neither a federal actor nor is it acting under color of state law.

4) Plaintiff fails to allege a due process claim upon which relief can be granted.

5) Plaintiff fails to allege an Eighth Amendment claim upon which relief can be granted.

6) Plaintiff fails to allege a Fifth Amendment equal protection claim upon which relief can be granted.

ECF No. 5-1 at 3 – 11.

## 3) Defendant Pierre LeConte's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

Defendant Leconte argues that the case should be dismissed because:

1) Plaintiff has failed to exhaust his administrative remedies;

2) Plaintiff has not pled a cognizable Bivens claim;

3) Plaintiff has not pled the adequately particularized personal or supervisory involvement necessary to support a Bivens claim against Defendant LeConte;

4) Plaintiff has not pled a viable due process claim against Defendant LeConte;

      5) Plaintiff has failed to plead a viable discrimination/equal protection claim against Defendant LeConte;

      6) Plaintiff's complaint fails to state an Eighth Amendment claim; and

      7) because Plaintiff cannot establish any violation of his constitutional rights, LeConte is entitled to qualified immunity.

ECF No. 21 at 6 - 15.

### III. Standard of Review

**A. Motion to Dismiss**

      Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs, 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

      To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion

7

couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed.R.Civ. P 8 (providing general rules of pleading), Fed.R.Civ. P. 9 (providing rules for pleading special matters), Fed.R.Civ. P. 10 (specifying pleading form), Fed.R.Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed.R.Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.) Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Dennison is representing himself, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

**B. Motion for Summary Judgment**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts

showing the existence of a genuine issue for trial. Id. This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84 - 85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to

---

[4] Porter, 534 U.S. at 524.

"afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101 - 102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[5] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from

---

[5] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint.  See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

Under § 1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Here, Plaintiff's terse complaint, filed without a memorandum in support, makes no mention of exhaustion.

Defendants assert that Plaintiff did not exhaust any of his administrative remedies regarding his claims prior to filing suit.  ECF No. 5-1 at 3; see also ECF No. 21 at 8. Defendant LeConte attaches a sworn Declaration of Tiffanie Little, BOP Legal Assistant, Mid-Atlantic Region ("Little Decl."), who avers that Plaintiff was committed to the BOP's custody on October 26, 2015, and during Plaintiff's entire incarceration with the BOP, he never filed a single administrative remedy on any matter. Little Decl., ECF No. 21-1, ¶¶ 6 - 7 at 3.  As proof thereof,

LeConte also attached a copy of Plaintiff's Administrative Remedy Generalized Retrieval, which is blank, and notes that "no remedy data exists for this inmate." ECF No. 21-1 at 9.

Defendant LeConte also provided a sworn affidavit summarizing the events leading up to Plaintiff's removal from the halfway house; it supports the conclusion that Plaintiff had sufficient time to begin the grievance process and obtain the forms necessary to complete it, before he was transferred to the Central Regional Jail where no BOP grievance forms would have been available. Plaintiff arrived at the halfway house on June 8, 2017, and was given a copy of the Federal Prohibited Acts list, and agreed to abide by them. LeConte Declaration ("LeConte Decl."), ECF No. 21-2, ¶ 7 at 4. He also received a copy of the Dismas Charities Rules, Regulations, and Minimum Restrictions; he signed a document indicating he had watched the Resident Orientation video and had the various Program Policies and Procedures explained to him. Id. On June 20, 2017, around 10:10 p.m., Plaintiff underwent a random drug screen. Id., ¶ 8 at 4. On July 3, 2017, he received an Incident Report, charging him with the use of drugs in violation of BOP disciplinary rules. Id., ¶ 9 at 4 -5. Plaintiff waived the 24-hour notice of his discipline hearing and received a copy of the discipline hearing and rights before a Center Discipline Hearing Committee ("CDC") the same day. Id., ¶ 10 at 5. He appeared before the CDC on the evening of July 3, 2017; the CDC recommended that he be returned to custody and lose good conduct time for his use of synthetic cannabinoids. Id., ¶ 11 at 5. On July 6, 2017, the Program Director at the halfway house contacted the BOP's Acting Residential Reentry Manager ("Acting RRM") regarding Plaintiff's violation, and reported that Plaintiff had received an incident report and had been found to have committed a prohibited act. Id., ¶ 12 at 5. Based on the information provided, and the nature of the incident, on July 10, 2017, Plaintiff was remanded to federal custody and transferred to the Central Regional Jail, the nearest jail with

which the BOP has an Intergovernmental Agreement with the United States Marshal Service ("USMS"). Id., ¶ 14 at 5 – 6. Subsequently, on September 11, 2017, Plaintiff's Incident Report was expunged. Id., ¶ 15 at 6. Plaintiff was transferred to a halfway house in Baltimore, Maryland on October 4, 2017. Id., ¶ 16 at 6. He was released to home confinement on November 3, 2017, and released from BOP custody on December 6, 2017. Id., ¶ 17 at 6. Therefore, it is apparent that Plaintiff was aware, at least a week before he was removed from the halfway house, that he was subject to removal; he had an opportunity to initiate the grievance process, and to obtain copies of the necessary forms to complete the grievance process at all levels.

Accordingly, it is apparent from a careful review of the record that Plaintiff did not even make an attempt to exhaust his grievances before filing suit. Further, Plaintiff received copies of both dispositive motions, and was advised via Roseboro Notices of his right to respond to each. Copies of both Roseboro Notices were sent to him via certified mail, return receipt requested, at his last-known address on the docket. A review of the docket reveals that delivery of each was accepted; the first, at the halfway house, on November 3, 2017[6] [ECF No. 15], and the second, at Plaintiff's home address after he was released, where he signed for it himself. ECF No. 23. Nonetheless, Plaintiff has made no attempt to file responses in opposition to either, thus, Plaintiff has not availed himself of the opportunity to rebut the Defendants' contentions regarding exhaustion.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's

---

[6] This was well before the date that Plaintiff was arrested on the revocation of his violations of supervised release.

14

actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d at 725.

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

The parties' dispositive motions, and the sworn declaration of non-party Tiffanie Little, the BOP's Legal Assistant for the BOP's Mid-Atlantic Regional Office, as well as the Administrative Remedy Generalized Retrieval, all support the conclusion that Plaintiff made no attempt to exhaust his claims. The Plaintiff has not provided the Court with anything to refute the conclusion regarding exhaustion, and has filed nothing to refute the sworn declaration of Tiffanie

Little. Generally unsworn statements without more are not admissible on summary judgment to contradict sworn affidavits. Edens v. Kennedy, 112 Fed. Appx. 870, 877 (4th Cir. 2004) citing Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003) and Provident Life & Accident Ins. Co. v. Goel, 274 F.3d 984, 1000 (5th Cir. 2001).

Accordingly, the undersigned finds that Plaintiff has not asserted that the administrative grievance was unavailable to him; has not attempted to explain why he failed to administratively exhaust his claims; and makes no claim that Defendant or any other prison official ever threatened him with violence to discourage him from filing grievances.

Accordingly, consistent with Custis v. Davis, Plaintiff has had the opportunity to address the issue and failed to do so. Therefore, the undersigned finds that his failure to exhaust cannot be excused, and this matter must be dismissed for failure to exhaust administrative remedies. Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, Plaintiff cannot now complete the exhaustion process under the BOP's administrative remedy procedure;[7] therefore, his claims should be dismissed with prejudice. See 28 C.F.R. § 542.10, *et seq.*

## V. Recommendation

For the foregoing reasons, the undersigned recommends that Plaintiff's complaint [ECF No. 1-1] be **DISMISSED with prejudice.**

Any party may, **within fourteen (14) days** after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

---

[7] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9)**, within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, *et seq.* (emphasis added).

A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation**. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir 1997).

The Clerk of the Court is directed to send a copy of this Order to the Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the District Court. The Clerk is directed to terminate the Magistrate Judge association with this case.

DATED: June 13, 2018

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE